**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ASIAN RELIEF, INC., | * | |
| 180 Admiral Cochrane Drive, Suite 240 | | |
| Annapolis, MD 21401 | * | |
| | | |
|     Petitioner | * | |
| | | |
| v. | * | Civil Case No. __1:14-cv-02422_____ |
| | | |
| UNITED STATES OF AMERICA, | * | |
| | | |
| Serve: Eric Holder | * | |
|     United States Attorney General | | |
|     U.S. DEPARTMENT OF JUSTICE | * | |
|     950 Pennsylvania Avenue, NW | | |
|     Washington, DC 20530-0001 | * | |
| | | |
|     Respondent | * | |

_____

## PETITION TO QUASH IRS SUMMONS

COMES NOW, Petitioner, Asian Relief Inc. by and through its attorneys, Timothy F. Maloney and Joseph, Greenwald & Laake, P.A., and requests that this Court quash the IRS Summons issued to Asian Relief, Inc. concerning *In the Matter of the French Income Tax Liabilities of Villages du Monde pour Enfants*, and in support thereof states as follows:

### NATURE OF THE ACTION

1.      This is a Petition seeking to quash an administrative summons ("Summons") issued by the Internal Revenue Service ("IRS"), to Petitioner Asian Relief, Inc. for testimony about and the production of Petitioner's documents purporting to be related to the Villages du Monde pour Enfants.

2.     The Summons purports to relate to an audit conducted by the French Tax Authority ("FTA") (known in France as "Direction Generale des Finances Publiques") into the tax liability of Villages du Monde pour Enfants, a French entity.

3.     The Summons was issued pursuant to one or more requests for information by the French Tax Authority to the IRS pursuant to Article 27 of the Convention between the Government of the United States of America and the Government of the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital ("Treaty" or "United States-France Income Tax Treaty"). The Summons was purportedly served on Asian Relief pursuant to Internal Revenue Code § 7609, pertaining to third-party recordkeepers.

4.     Petitioner is not a third-party recordkeeper as defined by the Internal Revenue Code, and thus the summons issued to them in that capacity is invalid and improper.

5.     Additionally, the Government cannot establish the existence of the requisite factors that would allow enforcement of the Summons, as it was not issued for a legitimate purpose, the documents sought therein are irrelevant to the stated purpose of the Summons, and the Government failed to follow the requisite administrative procedures in issuing the Summons.

6.     Furthermore, to enforce the Summons would constitute an abuse of judicial process, as the IRS is being utilized as a pawn in France's ongoing campaign of harassment and bad faith against VMPE and Petitioner, and is being utilized to further an ongoing criminal prosecution in France in direct contravention of domestic and international law.

7.     As the Summons was issued improperly and is invalid, Petitioner seeks to quash the Summons.

8.      Alternatively, Petitioner is entitled to, and requests, an opportunity to conduct discovery and obtain further evidence to demonstrate, via an evidentiary hearing, why the Summons should be quashed.

## INTERESTED PERSONS

9.      **The Sisters of Mary.** The Sisters of Mary started as a small group of women of Christian faithful formed into a religious congregation on the feast of the Assumption in 1964 by the late Fr. Aloysius Schwartz in Busan, Korea. Through the invitation of ecclesiastical and government authorities, the Sister of Mary have expanded to the Philippines, Mexico, Guatemala, Brazil and Honduras. The Sisters of Mary provide free educational and vocational welfare for the underprivileged children; medical care to the sick and the dying; and shelter service to the homeless. The Most Holy Father, Pope John Paul II, granted through the Congregation for Institutes of Consecrated Life and for Societies of Apostolic Life, the decree that the Sisters of Mary are a Religious Institute of Pontifical Right on March 2, 2000.

10.      **Asian Relief.** Petitioner Asian Relief, Inc., ("Asian Relief") is a non-profit organization qualified under Internal Revenue Code § 501(c)(3). It is incorporated under the laws of the District of Columbia and maintains offices in Annapolis, Maryland. Asian Relief employs the trade name "World Villages for Children." Asian Relief is dedicated to supporting the charity projects of the Sisters of Mary. The Board of Directors of Asian Relief consists of Sister Michaela Kim, SM (President); Sister Elena Belamino, SM (Treasurer); and Sister Teresita Sumalabe, SM. Like the Sisters of Mary, Asian Relief was founded by Father Schwartz.

11.      **Villages du Monde pour Enfants.** Villages du Monde pour Enfants ("VMPE") is a not-for-profit association incorporated under the laws of the French Republic. VMPE maintains it office in Paris, France. The Board of Directs of VMPE consists of Sister Michaela Kim, SM;

Sister Elena Belamino, SM (Treasurer); and Joseph F. Vita (President). VMPE is a fundraising organization which supports the charity programs of the Sisters of Mary.

12.     The Respondent is the United States of America on behalf of the Internal Revenue Service.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and the U.S. Internal Revenue Code, 26 U.S.C. §§ 7602 and 7609.

14.     Venue is proper pursuant to 28 U.S.C. §1391.

## THE SUMMONS

15.     On July 9, 2014, the IRS issued and served the Summons to Asian Relief, a copy of which is attached hereto as Exhibit A.

16.     Michael Richard, Tax Law Specialist for the IRS, is listed on the Summons as the "issuing officer." Frank Achike, Internal Revenue Agent, is listed on the Summons as the "IRS officer serving the summons." Michael Hayden, Supervisory Internal Revenue Agent, is listed on the Summons as the "approving officer."

17.     The Summons purports to be "In the matter of the French Tax Authority Income Tax Liabilities of Villages du Monde pour Enfants" and demands information relating to VMPE for the period January 1, 2007 through December 31, 2010.

18.     The Summons is purportedly issued pursuant to Article 27 of United States-France Income Tax Treaty.

## FACTUAL BACKGROUND

19.     **French Criminal Investigation of VMPE and Related Tax Audit.** In October, 2009, without notice to VMPE and without a hearing, a French magistrate (a prosecutorial

authority) summarily ordered that all funds held in bank accounts belonging to VMPE be frozen. On December 9, 2009, VMPE was placed under criminal examination for fraud, along with seventeen other organizations. The criminal examination was based, in part, on an assertion that VMPE deliberately and intentionally delivered tax receipts in exchange for donations sought when VMPE was allegedly not authorized to deliver such tax receipts. None of the allegations related to VMPE's evasion of or failure to pay taxes, but rather were grounded in allegations of purported fraud against the public, including prospective French donors. The criminal examination of VMPE has been pending for almost five years, throughout which the bank accounts of VMPE have remained frozen, and the funds have remained unavailable to the Sisters of Mary for their charitable works.

20.     In 2010, months **after** the initiating the examination, the magistrate requested that the French Tax Authority ("FTA") conduct a tax audit all of the associations subject to criminal investigation in order to determine whether or not they met the requirements to deliver tax receipts. The years selected for audit were tax years 2007, 2008 and 2009. VMPE fully cooperated with the French Tax Authority in their audit, and provided much of the same information that has been requested in the Summons.

21.     At some time during the audit, the French Tax Authority made an initial request for information to the IRS under Article 27 of the United States-France Income Tax Treaty. VMPE was informed of this initial request by letter dated June 24, 2011. *See* Exhibit B. However, to date VMPE has still not been informed by the French Tax Authority of the receipt of the response from the IRS to the French Tax Authority's initial request, despite their request for such information On or about February 16, 2012, the French police forwarded to the magistrate, M. Franck Zientara, information that the police received from the French Tax

Authority regarding inquiries made by the French Tax Authority pursuant to Article 27 of the Treaty. *See* Exhibit C, Cover Sheet of communique and Letter from French Tax Authority as it relates to VMPE.

22.     In June 2012, the French Tax Authority completed its review of the books and records of VMPE.   VMPE was advised that the review of the records was concluded satisfactorily and that, based on the review, VMPE that would not be subject to any rectification pending the IRS's responses to the request for information. In February 2013, the inspector/auditor from the French Tax Authority advised the Executive Director of VMPE, Ms. Berest, that the French Tax Authority had received a response from the IRS and confirmed that VMPE would not be subject to any rectification.

23.     **Information Document Request**. On or about February 20, 2013, the IRS mailed to Asian Relief an Information Document Request (Form 4564) ("IDR") requesting that Asian Relief provide specified records related to its operation. A copy of the IDR is attached hereto as Exhibit D and is incorporated herein by reference. The IDR states that the request was being made pursuant to Article 27 of the United States-France Income Tax Treaty, and specifically requested for the period January 1, 2007 through December 31, 2010:

1) A description of the internal organization (offices, departments, etc.) of Asian Relief, Inc., including an organization chart, as well as the names and addresses of any other organizations, entities, and/or persons (partners, subsidiaries, etc.) affiliated with Asian Relief, Inc.
2) Asian Relief, Inc. has allocated and invoiced service costs to the French entity Villages du Monde pour Enfants from a "pool" of subcontracted service costs. To better understand how this allocation was determined, please provide the following information:
   a) A list of all subcontractors used by Asian Relief, Inc. for the direct or indirect benefit of the French entity Villages du Monde pour Enfants.
   b) Descriptions of the services rendered by each of these subcontractors.
   c) Amounts invoiced by these subcontractors to Asian Relief, Inc.
   d) Proof of Asian Relief, Inc.'s payment of these invoiced amounts.
   e) Copies of all related invoices and receipts.

6

3) For each U.S.-based and foreign-based organization, government, and/or individual to which Asian Relief, Inc. provides financial support, grants, or other assistance, please provide the following information:
   a) The name, address, and point of contact or representative for each such organization, government, and individual.
   b) The amount and nature of the support provided to each such organization, government, and individual.
4) Copies of all legal contracts and agreements (including any amendments, assignments, modifications, and extensions/renewals) between Asian Relief, Inc. and the French entity Villages du Monde pour Enfants. Also, provide any audited financial statements and copies of any Form(s) 8283 filed with the IRS that pertain to non-cash donations subsequently distributed to or on behalf of Villages du Monde pour Enfants.
5) Indicate the person(s) having signature authority for the below account held by Asian Relief, Inc.:
   a) MANUFACTURERS AND TRADERS BANK (M&T BANK), account #19104942
6) To better determine the nature of the operations conducted by Village du Monde pour Enfants, please provide the following information:
   a) Copies of all internal records (general ledger account and journal details, receipts, bank account and other financial statements, etc.) detailing all transactions between Asian Relief, Inc. and the French entity Village du Monde pour Enfants.
   b) A description of the use of all funds received by Asian Relief, Inc. from Village du Monde pour Enfants.
   c) A list of the organizations, entities, persons, and/or beneficiaries in the United States or foreign country(ies) to which any of these funds were paid, including the dates and amounts of all such payments.

*See* Exhibit D.

**24.     IRS Summons to Asian Relief.** On July 9, 2014, the IRS served Asian Relief with an IRS Summons to appear before Frank Achike, Internal Revenue Agent, on August 8, 2014.  The summons seeks a broad range of information for the period January 1, 2007 through December 31, 2010 well beyond that information requested in the IDR, including:

1) All correspondence between Petitioner and any other entity or individual regarding Villages du Monde pour Enfants.
2) All documents related to billing of, or payment by Petitioner for goods or services provided by any entity or individual to, or for the benefit of, Villages du Monde pour Enfants, to include invoices and receipts.

3) Copies of all contracts and agreements (including any amendments, assignments, modifications, extensions, or renewals) between Petitioner and Villages du Monde pour Enfants.

4) All documentation pertaining to transactions between Petitioner and Villages du Monde pour Enfants, including, but not limited to, correspondence, invoices, receipts, bank and financial statements, and general ledger entries.

5) All documents detailing the names and addresses of all organizations, entities, persons, and/or beneficiaries to which any funds received by Petitioner from Villages du Monde pour Enfants, and the dates and amounts of any such payments.

*See* Exhibit A.

## ARGUMENT

### A. Asian Relief is not a third-party recordkeeper, and thus the summons is improper and invalid.

Section 7603(b)(2) of the Internal Revenue Code ("IRC") defines a "third-party recordkeeper" as:

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501(c)(14)(A));

(B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)));

(C) any person extending credit through the use of credit cards or similar devices;

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4)));

(E) any attorney;

(F) any accountant;

(G) any barter exchange (as defined in section 6045(c)(3));

(H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof;

(I) any enrolled agent; and

(J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)).

26 U.S.C. § 7603 (West 2014). In specifying the IRS's ability to issue summons to a third party, the courts and Congress noted that "[t]hird-party records have been defined as "those containing data about transactions between the taxpayer and parties other than the [third-party

8

recordkeeper]." *Upton v. I.R.S.*, 104 F.3d 543, 546 (2d Cir. 1997) (internal citation omitted). "For purposes of these rules, a third party recordkeeper is generally to be a person engaged in making or keeping the records involving transactions of other persons." *United States v. Exxon Co., U.S.A.*, 450 F. Supp. 472, 477 (D. Md. 1978) (citing S.Rep. No. 94-938, 94th Cong., 2nd Sess. 369, reprinted in (1976) U.S. Code Cong. & Admin. News, pp.2897, 3798).

It is clear that Asian Relief in no way falls within the definition – or the intended ambit – of the third party recordkeeper statute. Further, the records sought are the business records of Asian Relief itself, **not** of VMPE. Thus, Asian Relief does not constitute a third party recordkeeper as related to VMPE, and the summons in this case issued pursuant to I.R.C. § 7609 is invalid. *See United States v. J. Joseph Gartland, Inc.*, 79 F.R.D. 148, 150 (D. Md. 1978) (holding corporation was not a third-party recordkeeper because the records sought were its own business records, not the taxpayer's that the corporation was keeping on his behalf).

Section 7602 of the IRC gives the IRS authority to issue administrative summonses to taxpayers and third-party recordkeepers "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or collecting any such liability." 26 U.S.C. § 7602(a). Here, Asian Relief is neither a taxpayer for whom the IRS is attempting to determine tax liability, nor is it a third-party recordkeeper for any other individual or entity subject to § 7602's jurisdiction. Accordingly, the IRS lacks the ability to issue a summons to Asian Relief for the requested information, whether on its own behalf or on behalf of a foreign country. Furthermore, as Asian Relief is not a third-party recordkeeper, service of the summons by mail was improper pursuant to IRC § 7603(a). Thus, in all respects, the summons is invalid and must be quashed.

**B. Regardless of whether Asian Relief is a third-party recordkeeper, the summons was not issued in good faith and it would be an abuse of judicial power to enforce the summons.**

The government's power to investigate is not limitless. "When an interested party challenges enforcement of an IRS summons, under *United States v. Powell,* 379 U.S. 48 (1964), the initial burden rests with the government to establish a *prima facie* showing of good faith in issuing the summons . . . ." *Conner v. United States*, 434 F.3d 676, 680 (4th Cir. 2006). The government has the burden of satisfying the four factors:

> In order to show that its summons authority is being used in good faith pursuit of these purposes, the government, when seeking enforcement of a summons, must show: 1) the investigation is being conducted for a legitimate purpose; 2) the inquiry is relevant to that purpose; 3) the information sought is not already in the possession of the IRS; and 4) the administrative steps required by the Code have been followed.

*Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987) (quoting *Powell*, 379 U.S. at 57-58). The burden then shifts to the petitioner to either disprove any of the *Powell* factors or prove that the summons was issued in bad faith, and thus its enforcement would constitute an abuse of the court's process. *Alphin*, 809 F.2d at 238. "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 57. "The summoned party must receive notice, and may present argument and evidence on all matters bearing on a summons's validity." *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014). When the IRS uses its summons power for an unauthorized purpose or for any purpose reflecting on the good faith use of its power, the Supreme Court has said that the summons will not be enforced. *Reisman v. Caplin*, 375 U.S. 440 (1964).

### 1. The Government cannot satisfy the *Powell* factors as the "investigation" is not conducted pursuant to a legitimate purpose.

Under the first prong of the *Powell*, the IRS must show that "the investigation will be conducted for a legitimate purpose." *Powell,* 379 U.S. at 57. The IRS cannot meet this prong because the summons at issue here far exceeds the objectives and scope of the United States-France Income Tax Treaty. As its formal title illustrates, the Treaty's objectives are two-fold: the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital. *Lidas, Inc. v. United States*, 238 F.3d 1076, 1079 (9th Cir. 2001). Articles 1–26 and 29–34 of the Treaty relate to the first purpose, avoidance of double taxation, and contain provisions reducing or eliminating the tax liabilities of certain individuals who are domiciled in one of the contracting nations and who derive income from activities in the other. *Id*. Articles 27 and 28 relate to the second purpose, the prevention of tax evasion, and provide for the exchange of information between the tax authorities of the two nations. *Id*.

Because the Treaty's objectives are solely to avert tax evasion and avoid double taxation, any use of the Treaty must be limited to those two specific purposes. *See e.g. Int'l Bank for Reconstruction & Dev. v. D.C.*, 171 F.3d 687, 691 (D.C. Cir. 1999), citing *Maximov v. United States,* 373 U.S. 49, 55-56 (1963) ("We may not read international treaties so broadly as to create unintended benefits or to reach parties not within the scope of a treaty's language."). In order to demonstrate a legitimate purpose, the Government must show that the purpose of the French investigation is directed towards ascertaining VMPE's tax liability pursuant to those purposes. *See Fernandez-Marinelli v. United States*, 1995 WL 704965 (S.D.N.Y. Nov. 29, 1995) (finding the government made a prima facie showing "that the purpose of the Mexican investigation is legitimate, in that the investigation is directed towards ascertaining Fernandez-Marinelli's tax liability").

Indisputably, this case does not present issues of either tax evasion or double taxation. Neither the IRS nor the French government has provided any notice or evidence of an investigation or proceeding for the foregoing purposes. Instead, the French authorities are simply using the summons as a ploy to gather evidence for an unrelated criminal investigation against VMPE in France.

Pursuant to Article 27, § 1 of the Treaty, the validity of the request presented to the petitioning state must focus on "information that may be relevant," namely for the application of the Treaty, or for the application of its domestic tax laws. The only conduct alleged in the criminal investigation is whether VMPE had deliberately, intentionally, and unlawfully issued tax receipts to donors; these allegations have nothing to do with tax evasion or double taxation. Because the criminal investigation on its face is not covered by the Treaty it cannot possibly constitute a "legitimate" purpose under *Powell*. The use of the Treaty by French authorities to further the criminal investigation is not lawful or legitimate, and the IRS cannot meet its burden under *Powell*.

### 2. Even if Court deems the purpose of the investigation legitimate, the information sought is in no way relevant to that purpose.

To meet the standard for relevance under *Powell,* the summons must seek information that "might throw light upon the correctness of the taxpayer's return." *La Mura v. United States,* 765 F.2d 974, 979 (11th Cir.1985) (internal quotation marks omitted). The Government must demonstrate "in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered." *David H. Tedder & Associates, Inc. v. United States,* 77 F.3d 1166, 1168-69 (9th Cir. 1996) (quoting *United States v. Harrington,* 388 F.2d 520, 524 (2d Cir. 1968)). *See also* I.R.M. 5.17.6.3(2) ("In general, courts reject the use of a summons as a 'fishing expedition' and have held that there must be a 'realistic expectation'

rather than an 'idle hope' that something may be discovered to satisfy the relevance and materiality requirements of IRC § 7602, particularly where third-party documents are sought.") (internal citations omitted).

Here, Asian Relief was served with an IRS Summons demanding the production of a wide range of correspondence and documents pertaining to its relationship with VMPE. A closer look at the summons reveals the government's attempt to draft a broadly invasive demand by demanding:

A. "All correspondence"
B. "All documents related to billing of, or payment"
C. "Copies of all contracts and agreements"
D. "All documentation pertaining to transactions"
E. "All documents detailing the names and addresses of all organizations, entities, persons, and/or beneficiaries"

The requests set forth in the summons are so overly broad that they cannot have been realistically designed to produce relevant material. This is further exemplified by the nature of the requests themselves: the summons goes above and beyond seeking documents directly pertaining to VMPE, and even seeks correspondence between Asian Relief and **any other entity or individual regarding** VMPE. *See* Summons, attached at Exhibit A.

"[A] summons will be deemed unreasonable and will not be enforced if it is overbroad and disproportionate to the end sought, and a 'fishing expedition' through a taxpayer's records exceeds the relevant scope of the summons power." *United States v. Richards*, 631 F.2d 341, 345 (4th Cir. 1980) (quoting *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973)). *See also Muratore v. Dep't of Treasury*, 315 F. Supp. 2d 305, 312–13 (W.D.N.Y. 2004) (partly denying the IRS's motion to enforce the summons since the time span identified in the summons was so wide that it would require the production of irrelevant documents). "[T]his judicial protection against the sweeping or irrelevant order is *particularly* appropriate in matters where the demand

for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation." *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973) (quoting *United States v. Harrington*, 388 F.2d 520, 523 (2d Cir. 1968)). "Overbreadth has been defined as '. . . out of proportion to the ends sought,' and '. . . of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power.'" *United States v. Wyatt*, 637 F.2d 293, 302 (5th Cir. 1981) (internal citations omitted).

The overwhelming breadth of the request would require Asian Relief to produce an unwarranted amount of documents which would prove utterly irrelevant to the Matter of the French Income Tax Liabilities of Villages du Monde pour Enfants. If the French Tax Authority were truly investigating VMPE for tax liability as they allegedly claim to be, it is unclear how a wholly separate entity's correspondence to other, completely unrelated entities or individuals might "shed light" on VMPE's tax liability. As noted in *Theodore*, protection in this instance is particularly appropriate, as the request is directed to a third-party and not the taxpayer allegedly under investigation. The French Tax Authority's request is far exceeds the investigatory power and is not in any way targeted to achieve any permissible objective under the Treaty.

**3. The IRS failed to follow the proper administrative procedure in issuing the IRD and the Summons.**

Pursuant to the Internal Revenue Service's own administrative procedures, the road leading from a failure to respond to an IDR to the issuance of a summons follows an enforcement process consisting of three graduated steps: (1) issuance of a delinquency notice; (2) issuance of a pre-summons letter; and finally, (3) issuance of a summons. LB&I Directive LB&I-04-1113-009, "Large Business and International Directive on Information Document Request Enforcement Process" (Nov. 4, 2013); LB&I Directive LB&I-04-0214-004, "Updated Guidance for Examiners on Information Document Requests Enforcement Process" (Feb. 28, 2014). **This**

**process is mandatory and has no exceptions**. *Id.* Pursuant to said directives and I.R.M. 4.64.4, if a taxpayer does not provide a complete response to an IDR, the examiner will issue a Delinquency Notice signed by a Team Manager within 10 calendar days of the IDR response date. *Id.* If a taxpayer does not provide a complete response to the IDR by the response date in the Delinquency Notice, the examiner must then issue a Pre-Summons Letter, generally no later than 14 calendar days after the due date of the Delinquency Notice. *Id.* Finally, only after these procedures have been exhausted, is the examiner to issue a Summons for the requested records. *Id.*

No Delinquency Notice or Pre-Summons Letter was issued or ever discussed with, let alone issued to, Asian Relief. Although it is not dispositive, the failure of the IRS to follow its own mandatory procedures further exhibits the absolute lack of legitimate purpose in the issuance of this summons.

In sum, the government has not put forth a *prima facie* case that would warrant enforcement of the summons. The IRS has not, and cannot, satisfy the *Powell* factors as there is no legitimate purpose underlying the French Tax Authority's request, nor can the IRS demonstrate the relevance of any of the documents sought from this unrelated third party. As the IRS has failed to establish the existence of good faith as it pertains to this summons, and has failed to act in accordance with its own rules and procedures, the summons should be quashed.

### 4. Allowing the IRS summons to proceed would amount to an abuse of the judicial process.

Alternatively, a recipient seeking to quash an IRS summons may show that enforcement in the district court would amount to an "abuse" of the judicial process. *Powell*, 379 U.S. at 58. "An abuse of the judicial process occurs when a summons is sought for an 'improper purpose, such as . . . harass[ing] the taxpayer, . . . put[ting] pressure on him to settle a collateral dispute'

or obtaining information solely for a criminal investigation under the guise of a civil liability investigation." *Mazurek v. United States*, 271 F.3d 226, 231 (5th Cir. 2001) (quoting *Powell*, 379 U.S. at 58). An abuse of the judicial process may also occur where enforcement would contravene the attorney-client privilege[1] or "for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58.

The issuance of the summons was motivated by an improper purpose, and is a thinly veiled attempt to obtain information solely for a criminal prosecution under the guise of a civil liability investigation. Allowing the IRS summons to proceed would be an abuse of judicial process as the "investigation" is just another step in the ongoing pattern of harassment, and is being pursued in bad faith.

### a. The summons is the latest in a pattern of harassment of VMPE, and was issued in bad faith.

VMPE has been the object of a continued campaign of harassment first initiated by the French government, and now instigated domestically and transferred onto Asian Relief's shoulders by the IRS. The issuance of the summons is yet another attempt to drag Asian Relief into the French government's investigations of VMPE. This campaign of harassment against VMPE detrimentally affects Asian Relief by forcing it to deviate resources and litigate this matter. In addition to draining resources, the summons and its implications serve as a distraction from the Asian Relief's management of charitable projects around the world.

In October of 2009, VMPE's bank accounts were frozen by the French Tax Authority. Shortly thereafter, VMPE was placed under examination for fraud in part based on an assertion that VMPE deliberately and intentionally delivered tax receipts in exchange for donations sought when it knew the association was not authorized to deliver such tax receipts. In 2010, months

---

[1] *See, e.g.*, *United States v. First National Bank of Atlanta,* 628 F.2d 871, 873-74 (5th Cir. 1980); *United States v. Richards,* 431 F. Supp. 249 (E.D. Va. 1971 ), *aff'd* 631 F.2d 341 (4th Cir. 1980).

after VMPE and seventeen other associations were placed under examination, the magistrate requested that the French fiscal authorities audit all of the associations being investigated in order to determine whether or not they met the requirements to deliver tax receipts.[2] Further demonstrating that the French Tax Authority audit was a mere tool in the criminal investigation, there is extensive evidence in the French criminal file showing that the magistrate and prosecutor were communicating with the French fiscal authorities in regard to the audits:  the audit reports for each of the eighteen associations were sent to the magistrate; the magistrate requested that the fiscal authorities provide a list of the questions the tax authorities sent to the United States for each of the 18 associations; and copies of the seizure of funds documents for the associations with negative tax controls. Additionally, conversations between VMPE's Executive Director and the tax inspectors during the audit indicate that the investigating magistrate was communicating with the fiscal authorities – conversations which were confirmed by the February 16, 2012 letter from the police to the magistrate information the police received from the French Tax Authority regarding their audit of VMPE.

The IRS is specifically prohibited from issuing a summons if a Justice Department referral is in effect. § 7602(d)(1). This occurs where a recommendation has been made for a grand jury investigation or criminal prosecution. § 7602(d)(2). Once a referral has been made, no summons may be issued nor may enforcement be mandated with such a summons. Internal Revenue Manual 34.6.3.1 (02-01-2011). In this instance, it is clear the French investigation has already reached an analogous level, and thus the IRS may not issue a summons pertaining to VMPE.

---

[2] Under French tax regulations, as a registered not-for-profit association VMPE was not legally required to get prior authorization to deliver tax receipts.

Here, the French Tax Authority "investigation" is not simply an investigation regarding civil tax issues. While the litigation process is divided into investigatory and trial stages, in civil law countries, like France, the "trial" does not involve one distinct process in court; "rather, it consists of a series of events and court presentations which eventually lead to a judgment." Elena Del Valle, *Obtaining Evidence in France for Use in the United States*, 1 U. MIAMI Y.B. INT'L LAW 266, 268 (1991). The magistrate not only investigates and prepares the case, but also controls the scope of the proceedings, questions the witnesses, and summarize and interprets testimony for the record. *Id.* at 269. After the French's first foray into VMPE turned up nothing – as demonstrated by the conclusion of the examination "sans rectification'' – the French magistrate has continually used the French Tax Authority to dig further into the criminal allegations. They now have broadened the scope of their investigation internationally in a determined and unwarranted effort to find something wrong at VMPE.

France's bad faith is further demonstrated by their flouting of proper protocol and procedure at every stage of their criminal investigation. After the French froze VMPE's account, they failed to notify VMPE as required by law. To this day, France has refused to produce a freeze order for VMPE. In regard to the tax audit of VMPE, the French fiscal authorities are required to inform VMPE that it is entitled to have legal counsel during its audit.  While VMPE was properly informed of this entitlement to counsel, due to the freezing of VMPE's accounts by the magistrate and his refusal to unfreeze funds for VMPE to pay for legal counsel since September of 2010, VMPE has not had access to legal counsel during the tax control audit.

The bad faith underlying France's actions is further evident in France's dealings with the IRS. After requesting the IRS's involvement in obtaining further evidence in the criminal case against VMPE, France failed to provide written notice of the U.S. response to their first request,

as required by French law. Given this extensive pattern of harassment and attempts at circumventing legal constraints, it is clear the purpose of the French audit of VMPE was to gather evidence for the criminal investigation and specifically to substantiate the criminal allegations against VMPE. The IRS is not authorized to use the summons power to assist another agency by utilizing a summons to investigate a matter already being investigated by a grand jury, or by gathering evidence for the Department of Justice in its prosecution of a criminal case. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978).

Although the IRS is not required to look to the good faith of the requesting country's investigation **where the requesting country is interested only in civil tax collection**, this is not the case where the request is a mere pretext for a criminal investigation. *See Mazurek*, 271 F.3d at 321-32 ("Requiring district courts and the IRS to look into the good faith of the requesting country's investigation would—at least when, as here, the taxpayer concedes that the treaty partner is interested only in civil tax collection—unwisely necessitate an inquiry into the propriety of the FTA's actions under French law."). Where it is apparent that the request is mere pretext for an underlying criminal investigation, the good faith inquiry should not be so limited as to allow such flagrant abuses of the summons power to go undetected and unremedied.

The IRS cannot stand idly by while allowing the French to blatantly attempt to expand the French Tax Authority's rights by allowing it access to information, through IRS compliance, that it could not obtain under French law. A foreign nation may not use the governmental agencies of the United States to obtain information that it could not obtain under its own laws. *See United States v. Lincoln First Bank,* 1980 WL 1500 (S.D.N.Y.1980) ("The governmental agencies of the United States should not be employed to provide information to a foreign country which could not be obtained under the laws of that country. A holding to the contrary could

result in an unintended circumvention of applicable foreign laws and related domestic laws."). *See also, Mazurek*, 271 F.3d at 232 ("It is at least arguable that the FTA cannot use United States authority to expand its own rights and procure information that the FTA could not acquire under French laws."). Allowing the IRS to provide the French Tax Authority with the requested information permits the French Tax Authority and the French magistrate to circumvent French law and obtain information at a time that it could not obtain it directly. The United States-France Income Tax Treaty cannot be abused and used as a vehicle to assist the French magistrate and tax authority in its attempt to make an end run around the French judicial system.

As the Supreme Court recently stated, "[t]he taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive." *Clarke*, 134 S. Ct. at 2368. Asian Relief has more than met that burden in the case *sub judice*, and enforcement of the IRS Summons would be unjust and abusive. Accordingly, the summons should be quashed.

### 5.   Petitioner is entitled to discovery and an evidentiary hearing

Alternatively, Asian Relief would request an opportunity to conduct discovery and an evidentiary hearing on the matter. Where a substantial preliminary showing of abuse of the court's process has been made, a summoned party is entitled to substantiate his allegations by way of an evidentiary hearing. *United States v. Millman*, 765 F.2d 27 (2d Cir. 1985) (at the hearing, the agents responsible for the investigation and other witnesses may be called). See also *United States v. Church of Scientology*, 520 F.2d 818, 824 (9th Cir. 1975) (limited evidentiary hearing approved). Here, as Asian Relief has clearly met this preliminary standard, it should be entitled to conduct further discovery in order to further substantiate its allegations.

## **CONCLUSION**

For the foregoing reasons, Petitioner prays that this Court grant the following relief in its favor:

(a) Enter an Order quashing the Summons; or, alternatively,

(b) Enter an Order granting Petitioner time to conduct discovery, and scheduling an evidentiary hearing to determine if the IRS has satisfied the relevant standards for enforcement of the Summons; and

(c) Grant such other relief as the Court deems just and proper.

## **REQUEST FOR HEARING**

Plaintiff respectfully requests a hearing on this Motion.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

By:    /s/ Timothy F. Maloney
        Timothy F. Maloney (Bar No.: 03381)
        Kara L. Fischer (Bar No.: 18262)
        6404 Ivy Lane, Suite 400
        Greenbelt, Maryland  20770
        301/220-2200
        301/220-1214 (fax)
        tmaloney@jgllaw.com
        kfischer@jgllaw.com
        *Counsel for Petitioner Asian Relief*